IN THE MATTER OF ABRAM D. LONDA,
AN ATTORNEY AT LAW.

Argued September 14 and September 27, 1971—
Decided November 8, 1971.

Mr. *Gerald A. Flanzbaum* argued the cause for Union County Ethics Committee.

Mr. *Melvin J. Koestler* argued the cause for respondent (*Mr. Raymond S. Londa* on the brief; *Messrs. Koestler & Koestler,* attorneys).

PER CURIAM. In a presentment filed by the Union County Ethics Committee respondent Abram D. Londa, a member of the Bar of this State since 1932, was charged with violating Canon 11 of Professional Ethics. More specifically, the Committee found that Londa unlawfully commingled with his own funds and used for his personal purposes $20,000 of the assets of an estate for which he was acting as attorney.

Londa was the scrivener of the will of Travis Rhodes who died on November 16, 1960 leaving an estate of approxi-

mately $60,000. He handled the probate of the will and the appointment of Rhodes' wife and a longtime friend of Rhodes as co-executors and trustees, and thereafter represented the estate. Among its assets was a $25,000 group life insurance policy. About a month after the testator's death it was decided that $20,000 of the insurance proceeds should be placed in two savings accounts of $10,000 each. On January 5, 1961 respondent prepared a check in that amount payable to Abram D. Londa, Attorney, with the words "income deposit" typed thereon, and mailed it for signature to the male executor. The check was accompanied by a letter advising him that the money was "to be so deposited that it will produce $3\frac{1}{2}$ percent." Four days later the check was returned duly signed, whereupon, according to respondent, Mrs. Rhodes came to his office and placed her signature thereon. Mrs. Rhodes disputed Londa's assertion that she signed it, and considerable testimony was introduced on the subject. The Committee found and we agree that she did in fact sign. After having the check certified respondent deposited it in his own account, and thereafter used the proceeds for purely personal purposes.

At the time, Londa, a man of substantial means in terms of real estate holdings, was admittedly short of cash and had "many obligations to pay." He had invested heavily in two corporations in which he was stockholder and officer. The companies had failed and his entire investment had been lost. When Mrs. Rhodes came to his office to sign the $20,000 check, Londa testified that it occurred to him that he might borrow the money for his own pressing needs. He said he requested Mrs. Rhodes to grant the loan to be repaid upon demand, with the understanding that he would pay the same rate of interest as the estate would earn thereon in the savings accounts. Upon receiving her consent, he telephoned the co-executor and received his approval also. Whether this loan was in fact agreed to was and is the basic issue in the case.

Mrs. Rhodes and her co-executor denied respondent had requested the loan and that they ever agreed to make it. They were firm and positive in their assertion that the $20,000 check was to be used for the sole purpose of establishing the two savings accounts.

After consideration of the extensive evidence introduced during nine hearings in the matter, a majority of the Committee came "to the inescapable conclusion that no loan transaction was ever authorized," and that respondent "wrongfully commingled funds of the estate" with his own in violation of Canon 11. Our own study of the record and the exhibits satisfies us that the finding of the Committee was justified not only by the clear and convincing evidence rule, *In re Pennica,* 36 *N. J.* 401, 419 (1962), but also if tested by application of a beyond a reasonable doubt rule.

There is no need to recite the evidence in detail. It is sufficient to point out that respondent furnished no note to the estate for $20,000, or any other written evidence of a consensual loan transaction. In fact, respondent's correspondence with the representatives of the estate during the ensuing years carried a deceptive cast which was inconsistent with his claim that they had approved a $20,000 loan to him, and which subtly indicated that the two $10,000 savings accounts had been created. Because of a trust provision in the will, which called for certain monthly payments to the widow, administration of the estate continued over a number of years. On August 25, 1969 under pressure from Mrs. Rhodes (who had become Mrs. Zalesak by remarriage) and her attorneys to show that the two $10,000 savings accounts had been established in January 1961, and to produce the bank books therefor, respondent opened two such accounts, one in a savings bank and the second in a savings and loan association. Before doing this Londa obtained calculations to fix the interest that would have accumulated on each such account between January 9, 1961 (the date of the check referred to above), and August 25, 1969. On the

basis of these figures he deposited $14,268.12 in each account. Then, in an act which clearly indicates an attempt at deception, he supplied a photostat of a portion of each bank book showing the balance in each account. Obviously such a photostat would not reveal that the accounts had been opened in 1969 and not in 1961. Of course, when the matter was fully explored both the bank records and the bank books exposed the true situation.

Canon 11 ordains that "money of a client * * * or other trust property coming into the possession of a lawyer should be reported and accounted for promptly, and should not under any circumstances be commingled with his own or used by him." It is undisputed here that the $20,000 was commingled with respondent's own funds and used by him for personal purposes. As set forth above we agree that the evidence refutes his claim that the money was loaned to him. It follows therefore that the described deposit and use constitute a violation of the Canon.

A minority report drawn in the first person and signed by one member of the Committee was filed with us. A second member, without affixing his signature, indicated to our Clerk that he agreed with the minority view. The report agreed that respondent's evidence fell short of persuasively proving a loan, but said also that it was the Committee's burden to prove the commingling and improper use "clearly and convincingly," which had not been done.

However, the minority report found that respondent had violated Canon 6 even if he had obtained a loan of the $20,000 from the executors of the estate to be used for his own purposes. The reason advanced was that as soon as the funds were transferred to Londa he became a debtor of the estate he represented and, therefore, was in a conflict of interest situation which trespassed upon the Canon. Since no testimony was offered by him indicating that he had fully explained the conflict of interest to the fiduciaries of the estate, or that if he defaulted the estate would have to sue him, or which suggested that they obtain independent legal

opinion as to the advisability and propriety of the loan, the minority said that the ethical violation was clear. See *In re Banner*, 31 *N. J.* 24 (1959). It may be noted also that as an incident of its report, the majority of the Committee concurred in the minority view that even a consensual loan transaction under the circumstances presented here would of itself constitute an ethical transgression.

There is no need to consider whether Canon 6 was violated as the minority report found. Since we are satisfied that the proof warrants the conclusion that there was no $20,000 loan to respondent, the violation of Canon 11, as found by the majority of the Committee, must be accepted.

Our affirmance of the Committee's finding makes it necessary to consider the extent of discipline to be imposed upon respondent.

With respect to the transgression itself, the Committee found that Londa fully intended to restore the $20,000 to the estate, and did not intend to make permanent use of the fund for his own personal purposes. Moreover, we are satisfied that at all times he was financially capable of raising the money in the event of a demand for repayment. It is undisputed that he has returned the $20,000 plus the interest that would have been earned thereon if the savings accounts had been opened as required. Although such facts do not eradicate the delinquency, they are factors this Court has generally regarded as mitigative. *In re Ferraro*, 53 *N. J.* 183 (1969); *In re Stoldt*, 34 *N. J.* 355 (1961). The evidence disclosed also that except for the present transgression Londa has had an unblemished record as a member of the bar for over 39 years. Witnesses attested to his standing as a community and religious leader, and to his excellent reputation among the members of the bar and the citizens of his community.

Under the circumstances, it is our judgment that the proper measure of discipline to be imposed upon Londa is

suspension from the practice of law for a period of six months from the date hereof and until the further order of the Court.

So ordered.

*For suspension for six months*—Chief Justice WEINTRAUB and Justices JACOBS, FRANCIS, PROCTOR, SCHETTINO and MOUNTAIN—6.

*Opposed*—None.