**Marion Davies METZGER and Dennis Matthews**

v.

**AMERICAN FOOD MANAGEMENT, INC., a corporation organized under the laws of Pennsylvania, et al.**

**Civ. A. No. 73–1085.**

United States District Court,
W. D. Pennsylvania.

Feb. 5, 1975.

David J. Humphreys, Pittsburgh, Pa., for plaintiffs.

Robert B. Sommer, Pittsburgh, Pa., for defendants Strobl and Salkowe.

## OPINION

GOURLEY, Senior District Judge:

By this proceeding, which has been filed pursuant to the Securities Act of 1933 and the Securities Exchange Act of

1934, plaintiffs allege that they were victims of fraudulent misrepresentation and omissions made by defendants in connection with the sale of commercial notes of American Food Management, Inc. Judgment has heretofore been entered against the following defendants: Henry Lubson, Jr.; American Food Management, Inc.; A.F.M. Holding, Inc.; and George Salemo, Jr. The proceedings have been dismissed against Richard Hockenberry and John Sell, leaving Carl Strobl and Martin Salkowe as defendants. The Court has afforded the parties a full and complete trial.

The facts may be set forth in brief detail. American Food Management, Inc. (hereafter "A.F.M.") advertised the sale of commercial notes in the Commonwealth of Pennsylvania to members of the public. In response to these ads and based on a personal inspection of the facilities of A.F.M., plaintiff Dennis Matthews purchased a quantity of A.F.M.'s commercial notes. Plaintiff Marion Metzger likewise was first attracted to A.F.M.'s notes based on newspaper advertisements. Plaintiffs each received a brochure entitled, "A Wee Bit More Interest with 10% Commercial Notes," which they contend contained material misrepresentations of fact. In addition, plaintiffs contend that the brochure failed to accurately reflect the financial status of the company.

Essentially, plaintiffs contend that defendants Strobl and Salkowe were sellers of the commercial notes and were "controlling persons" of A.F.M., as this term is defined by the Securities Exchange Commission,[1] since they served respectively as Secretary-Treasurer and Vice President of the company and were each directors of the corporation. Liability

is thus premised on § 10(b) of the Securities Exchange Act of 1934 and Rule 10(b) 5 promulgated thereunder, which make it illegal for any person to employ a manipulative scheme or device or make any untrue or misleading statements in connection with the purchase of any security. In addition, liability is asserted on the basis of § 17 of the Securities Act of 1933, which provides:

(a) "It shall be unlawful for any person in the offer or sale of any securities by the use of any means or instruments of transportation or communication in interstate commerce or by the use of the mails, directly or indirectly—

(1) to employ any device, scheme, or artifice to defraud, or (2) to obtain money or property by means of any untrue statement of a material fact or any omission to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading, or (3) to engage in any transaction, practice, or course of business which operates or would operate as a fraud or deceit upon the purchaser."

■ The conclusion seems inescapable that in their respective positions of authority, defendants were responsible for selling commercial notes of a company which they knew to be insolvent. In this regard, it is well to note that when the Pennsylvania Securities Commission issued a cease and desist order to A.F.M. on August 20, 1973, the company was unable to pay the holders of commercial notes as they became due and was forced to default on the payment therefor. Both of these defendants knew of the financial losses and difficulties that A.F.

---

1. 17 CFR § 231.405(f) (1971) defines "control" for purposes of the 1933 Act as follows:

"The term 'control' (including the terms 'controlling,' 'controlled by' and 'under common controls with') means possession direct or indirect, of the power to direct or cause the direction of the management

and policies of a person, whether through the ownership of voting securities, by contract or otherwise."
See also 17 CFR § 240.12b–2(f), which defines "control" for purposes of the 1934 Act the same way "control" is defined for the 1933 Act.

M. was having; and, moreover, each of them knew that the commercial notes being sold were the primary if not the sole source of income for the company. Indeed, they each knew or should have known that because of the vast expenses of A.F.M. which far exceeded gross income, as reflected in various balance sheets of the company, A.F.M. came to rely on the continued sale of commercial notes to meet the repayment schedule of previously sold notes. Defendants were certainly aware of all the efforts put forth by the company to accomplish the sale of these commercial notes. In fact, defendant Strobl, whose signature appears on the notes, supervised the deposit and use of the money received from the sales of the commercial notes.

 Acceptance of a position as director of American Food Management, Inc., under Pennsylvania law carries with it a positive duty to manage the affairs of the corporation. See 15 Purdons Statutes §§ 1401, 1408. Failure to take positive steps to correct an illegal corporate action must be deemed equivalent to active participation in the selling scheme.

It is clear that Carl Strobl participated in the sale of the commercial notes directly by reason of his having signed the commercial notes and having supervisory power over the proceeds when received, and Martin Salkowe must be deemed to have also directly participated in selling the notes by reason of his position as a director and vice president of A.F.M.

Alternatively, liability exists by virtue of defendants being controlling persons. Both the 1933 Act and the 1934 Act impose liability on such persons to the extent that the defendant company has violated the Securities laws. See § 15 of the Securities Act of 1933 and § 20(a) of the Securities Exchange Act of 1934. It seems obvious to the Court that since defendants were officers and were two of the three directors of the company, they were definitely in a position of control as that term has heretofore been defined. Very simply stated, defendants

Strobl and Salkowe were aware of the economically precipitous position of the company but failed to exert any power to prevent the fraud of selling worthless securities from being perpetrated on plaintiffs. The Court does not discern in any of their conduct any attempt to oppose management policies and thus must infer that they condoned and participated in a scheme to defraud. See United States v. Sherwood, 175 F.Supp. 480, 483 (S.D.N.Y.1959).

In view of the foregoing, the Court must conclude that plaintiffs are entitled to recover the amounts of their respective investments, along with any interest which has accrued thereon.

Findings of fact and conclusions of law have not been separately stated but are included in the body of the foregoing opinion as specifically authorized by Rule 52(a) of the Federal Rules of Civil Procedure.

An appropriate Order is entered.