[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

————————————————

No. 13-15861
Non-Argument Calendar

————————————————

D.C. Docket No. 6:13-cr-00170-CEH-DAB-1

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

KENNETH POINTON,
MARGARET POINTON,

Defendants-Appellants.

————————————————

Appeals from the United States District Court
for the Middle District of Florida

————————————————

(November 4, 2014)

Before WILLIAM PRYOR, MARTIN, and JORDAN, Circuit Judges.

PER CURIAM:

Kenneth and Margaret Pointon, husband and wife, appeal their convictions on charges related to federal income tax fraud.  They collectively present four arguments: (1) the district court erred in denying their motions for judgment of acquittal, on the charge of making false claims to the Internal Revenue Service ("IRS") (Count I); (2) the district court erred in denying Mr. Pointon's motion for judgment of acquittal on the charge of attempting to impede and obstruct the administration of the internal revenue laws (Count II); (3) the district court abused its discretion in denying Mrs. Pointon's requested modification to the jury instruction relating to "good-faith"; and (4) the evidence presented on Count I materially varied from the offense as charged in the indictment.  For the reasons that follow, we affirm.

## I

We summarize the facts only insofar as necessary to provide context for our decision.

This case involves what is known as a 1099-OID tax-refund scheme.  Under the scheme, taxpayers use false 1099 and OID forms (used to report interest income on certain investments) and corresponding false withholding forms to fraudulently increase the amount of their tax returns.  It is undisputed that the Pointons' electronically-filed 2008 tax return was false.  The disputed issue at trial

was whether the Pointons were involved in the filing of the return and acted with intent to defraud.

Sometime in 2008, Paul Laird approached Anthony Pursino about the 1099-OID scheme.  Mr. Pursino testified that, at the time, he did not know the scheme was illegal.  Mr. Laird told Mr. Pursino that Michael Enright, his partner in the tax-preparation business, needed help filing clients' 1099s with the IRS.  Mr. Pursino agreed to help and was paid for each batch of 1099s he filed.  One batch Mr. Michael Enright gave him included eleven 1099s reflecting $745,987 in interest paid to the Pointons.  Mr. Pursino testified that he never met directly with the Pointons, but Mrs. Pointon testified that she and Mr. Pointon met with James (Jim) Enright (Michael's brother) in early 2009 to discuss buying property.

The Pointons received refunds of less than $2000 for tax years 2006 and 2007.  The Pointons' 2008 tax return indicated that they earned a combined $65,342 in wages, salaries, and tips in 2008.  The return was filed electronically with a personal identification number ("PIN") and included a Schedule B for interest and ordinary dividends, which falsely indicated that 13 entities paid the Pointons $827,646 in taxable interest and dividends.  The Pointons actually had less than $100 in interest income in 2008.

The return also falsely indicated that the Pointons had a total of $788,094 in federal income tax withheld in 2008.  The difference between the total tax withheld

3

($788,094) and the Pointons' calculated tax liability ($278,674) yielded a requested refund of $509,420. On May 13, 2009, the IRS sent the Pointons a refund check in that amount.

The Pointons—who lived in Orlando, Florida, at the time they received the refund—indorsed the refund check and deposited the proceeds in a new account at a Wachovia Bank in Dunedin, Florida (approximately 1 hour and 45 minutes southwest of Orlando). That same day, Mrs. Pointon signed a $26,000 check issued on the Wachovia account made payable to Mr. Michael Enright for tax-preparation services. Days later, she signed four checks from the Wachovia account totaling $257,000, and withdrew another $178,000, which was used to open a new account at SunTrust Bank. The Pointons also transferred $160,000 from the new Wachovia account into an existing account at Fairwinds Credit Union.

According to IRS Agent Jeremy Hess, the magnitude to the Pointons' 2008 refund, as compared to the refund in previous years, raised a red flag at the IRS. The IRS began investigating and attempted to recoup the funds by issuing notices of levy and a notice of jeopardy levy. In response, Mr. Pointon sent several pieces of correspondences to the IRS. For example, he returned a notice of federal tax lien to the IRS, stamped as follows in red:

IRS "LEVY" IS DISPUTED!
CEASE & DESIST COLLECTIONS – FDCPA 15 USC §1692G §809

4

THE IRS HAS THE BURDEN OF PROOF TO PROVIDE
AND [sic] DETAILED EXPLANATION AS TO WHY MY TAX RETURNS
ARE DETERMINED TO BE FRIVOLOUS
[Signed and dated by Mr. Pointon]
DEMAND FOR VERIFIED EVIDENCE OF LAWFUL
FEDERAL ASSESSMENT

Mr. Pointon also mailed six Form 1040-V payment vouchers, along with bonded promissory notes for $10 million each, to different IRS centers across the country. In April of 2010, the IRS sent the Pointons a letter warning that their property was subject to seizure and sale. Mr. Pointon returned the letter, stamped with the following notation: "Accepted for Value[,] Exempt from Levy."

The Pointons were indicted by a federal grand jury in July of 2013 and charged with knowingly making and presenting, and causing to be made or presented, a claim against the United States which they knew to be false, fictitious, and fraudulent, in violation of 18 U.S.C. §§ 287 and 2 (Count I). Mr. Pointon was also charged with corruptly endeavoring or attempting to endeavor to obstruct and impede the due administration of the internal revenue laws, in violation of 26 U.S.C. § 7212(a) (Count II).

At trial both Mr. and Mrs. Pointon moved for judgment of acquittal at the close of the government's case and at the close of all the evidence. The district court denied the motions, and the jury returned guilty verdicts on all counts. As to Count II, the jury found that Mr. Pointon had committed four acts of attempting to interfere with the administration of internal revenue laws. The district court

5

sentenced Mr. Pointon to 30 months of imprisonment, and Mrs. Pointon to 13 months of imprisonment. This appeal followed.

## II

The Pointons argue that the district court erred in denying their motions for judgment of acquittal as to Count I. The Pointons contend that the jury reached its verdict based on unreasonable and impermissible inferences drawn from circumstantial evidence.

We review a district court's denial of a motion for judgment of acquittal *de novo*. *United States v. Westry*, 524 F.3d 1198, 1210 (11th Cir. 2008). But, we view the evidence in the light most favorable to the government, drawing all reasonable inferences and credibility determinations in favor of the jury's verdict. *United States v. Evans*, 344 F.3d 1131, 1134 (11th Cir. 2003). A jury may choose among reasonable interpretations of the evidence, and the government need not exclude every reasonable hypothesis of innocence. *United States v. Tampas*, 493 F.3d 1291, 1298 (11th Cir. 2007).

## A

The Pointons were convicted on Count I of violating the False Claims Act, 18 U.S.C. §§ 287 and 2. In relevant part, § 287 makes it unlawful to "make[ ] or present[ ] to any . . . department or agency [of the United States], any claim upon or against the United States, or any department or agency thereof, knowing such

claim to be false, fictitious, or fraudulent[.]"  To prove a violation of § 287, the government must establish that the defendant: (1) made or presented a false, fictitious, or fraudulent claim to a department or agency of the United States; (2) knew the claim was false, fictitious, or fraudulent; and (3) made the claim "with the specific intent to violate the law or with a consciousness that what he was doing was wrong."  *United States v. Slocum*, 708 F.2d 587, 596 (11th Cir. 1983).

The Pointons do not dispute that the interest income and withholding information contained in their 2008 tax return was false.  Rather, they claim that the evidence was insufficient to prove beyond a reasonable doubt that they knowingly presented the false return with the intent to defraud the government. We disagree.

To prove that the Pointons filed their 2008 tax return or caused it to be filed, witnesses for the government testified that although the Pointons' return did not contain an ink signature, it had been signed by digital signature with a PIN.  To obtain a PIN, a person must have information known only to the taxpayer: the previous year's adjusted gross income.  Government witnesses acknowledged that the IRS did not know who actually filed the Pointons' return.  Agent Roman Hernandez, however, testified that before the IRS will accept an electronic return, the filer must provide the taxpayer's social security number and date of birth. Agent Jeremy Hess testified that the person who completes a return must have

7

access to the taxpayer's W-2 form, which is mailed only to the taxpayer. This evidence was enough to prove that the Pointons filed their 2008 tax return, or caused it to be filed.

Proof of intent to defraud comes mainly from the Pointons' conduct after receipt of the refund check. The Pointons drove almost two hours to Dunedin and opened an account at a bank at which they had not previously done business. They indorsed and deposited the refund check at that bank. *See United States v. Branker*, 395 F.2d 881, 889 (2d Cir. 1968) (rejecting the argument that "presentation of a refund check for payment does not constitute the making of a false claim . . . within the meaning . . . § 287"). Mrs. Pointon signed a $26,000 check payable to Mr. Michael Enright—the person Mr. Pursino identified as having provided him with false information relating to the Pointons' 1099s—for tax-preparation services. The Pointons then also executed multiple funds transfers between a number of different bank accounts and used the refund money to pay personal debts and expenses. It is also important to keep in mind that the size of the 2008 refund check (over $500,000) dwarfed the refunds the Pointons received in the previous two years. The huge discrepancy was something the jury could consider in determining intent to defraud.

Mrs. Pointon testified in her own defense and claimed to be unaware that the false return had been filed under her and her husband's name. She also claimed

that Mr. Pointon took care of the taxes in 2008 and that a number of personal issues at the time (including caring for their injured son) kept her from taking part in the filing. Mrs. Pointon claims that she was operating under a good-faith belief that the refund was legitimate. The jury could have viewed this claim as not credible, especially in light of the fact that the Pointons' stated salary income in 2008 was nearly identical as their income in 2006 and 2007, yet their return in 2008 was nearly 250 times greater than that of the two previous years. The jury was entitled to reject Mrs. Pointon's claim and to rely on her testimony as substantive evidence of guilt. *See United States v. Brown*, 53 F.3d 312, 314 (11th Cir. 1995).

"[W]e are bound by the jury's credibility determinations, and by its rejection of the inferences raised by the defendant." *United States v. Peters*, 403 F.3d 1263, 1268 (11th Cir. 2005). "[T]o uphold the denial [of a motion for judgment of acquittal, we] need only determine that a reasonable fact-finder could conclude that the evidence established the defendant's guilt beyond a reasonable doubt." *United States v. Pistone*, 177 F.3d 957, 958 (11th Cir. 1999). Viewing the evidence in the light most favorable to the government, and drawing all reasonable inferences in favor of the jury's verdict, as we must, we hold the district court did not err in denying the Pointons' motions for judgment of acquittal.

**B**

Mr. Pointon also attacks the sufficiency of the evidence supporting his conviction on Count II for attempting to obstruct the administration of internal revenue laws.    Under 26 U.S.C. § 7212(a), it is unlawful to "corruptly . . . endeavor[ ] to intimidate or impede any officer or employee of the United States acting in an official capacity . . . or in any other way corruptly . . . obstruct[ ] or impede[ ], or endeavor[ ] to obstruct or impede, the due administration" of internal revenue laws.  As used in § 7212(a), "corruptly" means to act "'knowingly and dishonestly with the specific intent to secure an unlawful benefit.'"  *United States v. Dean*, 487 F.3d 840, 853 (11th Cir. 2007) (quoting Eleventh Circuit Pattern Jury Instructions, Crim. (2003)).    Notably, because § 7212—titled "Attempts to interfere with administration of internal revenue laws"—criminalizes conduct that either obstructs or impedes the due administration of the law, or "endeavors" to do so, the government did not have to prove that Mr. Pointon's actions actually impeded or obstructed the IRS in order to obtain a conviction.  *See United States v. Popkin*, 943 F.2d 1535, 1535 (11th Cir. 1991) (holding that § 7212 "criminalizes attempts to interfere with administration of internal revenue laws").

The government alleged that Mr. Pointon violated § 7212(a) through four separate acts: (1) sending six bonded promissory notes for $10 million each and six

Form 1040V payment vouchers to different IRS service centers; (2) mailing a letter to the IRS ordering the agency to offset his tax due and owing and threatening to audit the agency; (3) returning two intent to levy letters to the IRS, stamped "Accepted for Value[,] Exempt from Levy"; and (4) returning an IRS warning letter, stamped "Cease and Desist Collections," and including a Form 1040-V voucher for $850,000.  The jury, in returning a verdict of guilty, specially found that he had committed each of the four alleged acts.

Mr. Pointon does not deny that he committed the four acts.  He contends instead that the government presented insufficient evidence from which a reasonable juror could have concluded that his acts actually impeded the administration of IRS laws.   Mr. Pointon argues that, because his actions did not cause IRS agents to work overtime or result in an IRS shutdown, he did not obstruct or impede the Agency.  His argument fails.

As explained above, the government did not have to prove that Mr. Pointon actions actually impeded or obstructed the IRS in its administration of the internal revenue laws.  Agent Hernandez testified that sending correspondence to multiple IRS centers—as Mr. Pointon did here—can cause confusion within the Agency. Agent Hess similarly testified that sending payment vouchers to different IRS centers can frustrate collection efforts.  He also testified that payment vouchers are received by the Frivolous Filers Unit ("FFU"), and when frivolous correspondence

11

arrives, the FFU is forced to deal with them to determine whether they are part of an ongoing criminal case or other collection efforts.

Based on this testimony, a reasonable jury could conclude that Mr. Pointon's actions constituted an attempt at knowing and dishonest conduct aimed at thwarting the IRS's administration of internal revenue laws, which was intended to secure an unlawful benefit—namely, a fraudulent tax refund.  The district court did not err in denying Mr. Pointon's motion for judgment of acquittal as to Count II.

### III

Mrs. Pointon argues that the district court abused its discretion in rejecting her proposed modification to the jury instruction relating to her good-faith defense.  We are not persuaded.

"We review a district court's refusal to give a particular jury instruction for abuse of discretion[.]" *United States v. Cornillie*, 92 F.3d 1108, 1109 (11th Cir. 1996).  Jury instructions themselves, however, are reviewed "*de novo* to determine whether they misstate the law or mislead the jury to the prejudice of the objecting party." *Palmer v. Bd. of Regents of Univ. Sys. of Ga.*, 208 F.3d 969, 973 (11th Cir. 2000).  The failure of a district court to give an appropriate instruction is reversible error where the requested instruction: "(1) was correct; (2) was not substantially covered by the charge actually given; and (3) dealt with some point in the trial so important that failure to give the requested instruction seriously impaired the

12

defendant's ability to conduct his defense." *United States v. Chastain*, 198 F.3d 1338, 1350 (11th Cir. 1999). When the instruction omitted, however, is "substantially covered by other instructions which were delivered by the district court, there can be no reversible error." *United States v. Snipes*, 611 F.3d 855, 868 (11th Cir. 2010) (quotations omitted).

> The district court gave the following instruction regarding good-faith:
>
> > Good faith is a complete defense to a charge that requires intent to defraud. A Defendant is not required to prove good faith. Rather, the Government must prove intent to defraud beyond a reasonable doubt. An honestly held opinion or an honestly formed belief cannot be fraudulent intent, even if the opinion or belief is mistaken.
> >
> > Similarly, evidence of a mistake in judgment, an error in management or carelessness does not establish fraudulent intent, but an act is not done in good faith if the Defendant intended to deceive others by making representations the Defendant knew to be false or fraudulent.

Mrs. Pointon claims the district court erred in refusing to add language explaining that a belief held in good faith is a complete defense, even if such belief is not "objectively reasonable." We have ruled, however, that "there is no requirement . . . that jury instructions specifically note that a good-faith defense need not be objectively reasonable." *United States v. Morris*, 20 F.3d 1111, 1118 (11th Cir. 1994). Moreover, the district court's jury instructions correctly stated the law and substantially captured the idea that Mrs. Pointon's requested modification sought to convey. *Snipes*, 611 F.3d at 868.

Accordingly, we hold that the district court did not abuse its discretion by denying Mrs. Pointon's requested modification.


## IV

Finally, Mrs. Pointon argues that the evidence presented by the government and relied on by the jury to convict her on Count I materially varied from the offense as alleged in the indictment.  Mrs. Pointon concedes that, because she did not raise this claim before the district court, it is subject to plain-error review.

According to Mrs. Pointon, the criminal act alleged in Count I of the indictment was the preparation and submission of the fraudulent 2008 federal income tax return, yet the evidence presented by the government at trial centered on the acceptance, deposit, and use of the corresponding tax refund.  Therefore, Mrs. Pointon contends, she was unfairly surprised at trial and her ability to defend against Count I was frustrated.  We find her argument unconvincing.

Although Agent Hess testified that depositing a refund check is tantamount to filing a false claim with the IRS, the evidence presented at trial independently established that the Pointons intentionally filed a false tax return, knowing that it was false.  And the jury convicted the Pointons of doing precisely that.  Moreover, as to Count I, the district court instructed the jury that the Pointons had been charged with violating § 287 "by preparing and causing to be prepared and filing

14

and causing to be filed a federal income tax return, . . . with knowledge that such claims were false, fictitious, and fraudulent." In short, there was no error, much less a plain error that affected the Pointon's substantial rights and the fairness of the proceedings. *See United States v. Schultz,* 565 F.3d 1353, 1356 (11th Cir. 2009).

## V

For the reasons set forth above, we affirm.

**AFFIRMED.**