NOTICE:  This opinion is subject to motions for reargument under V.R.A.P. 40 as well as formal revision before publication in the Vermont Reports.  Readers are requested to notify the Reporter of Decisions by email at: JUD.Reporter@vermont.gov or by mail at: Vermont Supreme Court, 109 State Street, Montpelier, Vermont 05609-0801, of any errors in order that corrections may be made before this opinion goes to press.

2024 VT 14

No. 23-AP-059

| | |
|---|---|
| Agency of Transportation | Supreme Court |
| | |
| | On Appeal from |
| v. | Superior Court, Chittenden Unit, Civil Division |
| | |
| Timberlake Associates, LLC et al. (R.L. Vallee, Inc. and Crystal Clear Hospitality, LLC, Appellants) | October Term, 2023 |

Samuel Hoar, Jr., J.

Charity R. Clark, Attorney General, Montpelier, and Mark A. Seltzer, Assistant Attorney General, Barre, for Plaintiff-Appellee.

Alexander J. LaRosa and Daniel A. Seff (On the Brief) of MSK Attorneys, Burlington, for Defendants-Appellants.

PRESENT:  Reiber, C.J., Eaton, Carroll, Cohen and Waples, JJ.

¶ 1.  **WAPLES, J.**  Defendants R.L. Vallee, Inc., and Crystal Clear Hospitality, LLC (CCH), appeal a civil division order concluding that they accepted and used payments issued by the Vermont Agency of Transportation in connection with a judgment of condemnation and are therefore barred from further contesting the necessity of the taking or the public purpose of the Agency's highway project under 19 V.S.A. § 506(c).  They argue that the trial court erred in granting summary judgment to the Agency on this basis because: the question of whether their actions with respect to the Agency's initial payments gave rise to the § 506(c) bar became moot when the Agency subsequently revised the valuations of their property interests; those actions did

not constitute "use" under § 506(c); they raised a genuine dispute of material fact; the Agency bore the burden to show that defendants knowingly, intelligently, and voluntarily waived their rights under § 506(c) and failed to do so; and § 506(c) is unconstitutional on its face and as applied. We affirm.

¶ 2. The record indicates the following. In connection with its plans to reconstruct the I-89 interchange with U.S. Routes 2 and 7 at Exit 16 in Colchester, the Agency sought to obtain certain rights in nearby property. Chapter 5 of Title 19 sets forth the procedures the Agency must use to condemn property rights for a state highway project. See 19 V.S.A. §§ 500-520. Under the statute, if a property owner "has not entered into an agreement stipulating to the necessity of a taking and the public purpose of a highway project, and the Agency wishes to proceed with the taking," the Agency must "file a verified complaint in the Civil Division of the Superior Court in a county where the project is located seeking a judgment of condemnation" which "name[s] as defendants each property owner who has not stipulated to a proposed taking." 19 V.S.A. § 504(a). In the resulting civil action, the owner "has the right to challenge the taking by contesting the necessity of the taking, the public purpose of the project, or both." Id. § 503(d)(4). If the trial court finds the proposed taking lawful, it must issue a judgment of condemnation declaring that title to the property will be transferred to the Agency after the Agency complies with certain statutory requirements, including tendering or depositing payment. Id. § 505(c). The judgment of condemnation may be appealed to this Court, but, under § 506(c), "an owner's acceptance and use" of the Agency's payment "shall bar the owner's right to contest necessity and public purpose." Id. § 506(c), see also id. § 505(e).

¶ 3. The Agency initiated the underlying proceedings in June 2019 by filing a complaint under § 504(a). CCH was named as a defendant, but Vallee—which leases the right to use a driveway on which the Agency plans to perform construction—was not. Vallee moved to intervene and, on appeal from the civil division's denial of that motion, we held that Vallee was

2

entitled to be named as a defendant in the Agency's condemnation action as the owner of a legal interest of record in property proposed to be taken that had not stipulated to the taking. Agency of Transp. v. Timberlake Assocs., 2020 VT 73, ¶¶ 16-18, 213 Vt. 106, 239 A.3d 253. As a result, in November 2020 the Agency amended its complaint to add Vallee as a defendant.

¶ 4. The amended complaint identified the Agency's highway project as "Transportation Project Colchester HES NH 5600(14)" and described each of the property rights proposed to be acquired by parcel. CCH owns Parcel 9, which houses the Hampton Inn and Lighthouse Restaurant and Lounge, while the driveway Vallee leases the right to use is located on Parcel 14.

¶ 5. After an evidentiary hearing held over the course of four days, the civil division issued a written decision concluding that no defendant demonstrated bad faith or abuse of discretion in the Agency's determination of the necessity for and public purpose of the project, and the Agency had satisfied its burden of demonstrating the need to take the particular property interests at issue to the extent proposed. See 19 V.S.A. § 505(a)(3) ("The court shall presume that the Agency's determination of the necessity for and public purpose of a project is correct, unless a party demonstrates bad faith or abuse of discretion . . . .  The court shall review de novo the Agency's determination of the need to take a particular property and to take it to the extent proposed."). Having found the proposed taking lawful, the civil division issued a judgment of condemnation on February 25, 2022, providing that the land and rights at issue would be transferred to the Agency after the Agency recorded the judgment in the Colchester land records, tendered or deposited payment of its offers of just compensation, and notified the owners of the recording and payment. The judgment order contained the following warning pertaining to the statutory provision at issue in this appeal:

> In accordance with 19 V.S.A. § 506(c), except in the case of agreed compensation, an owner's acceptance and use of [the Agency's] payment of its offer of just compensation does not affect his or her

3

right to contest or appeal damages under 19 V.S.A. §§ 511-513, but shall bar the owner's right to contest necessity and public purpose.

¶ 6.     Vallee, CCH, and one other defendant appealed the judgment of condemnation to this Court on March 9, 2022. Vallee and CCH each filed docketing statements reflecting an intent to challenge the civil division's conclusions as to necessity and public purpose. The Agency moved to dismiss Vallee and CCH from the appeal or, in the alternative, to stay the appeal and remand to the civil division for the purpose of making additional factual findings with respect to whether actions taken by Vallee and CCH upon receiving the Agency's payments gave rise to the § 506(c) bar. We granted the latter request and remanded with instructions "for the civil division to make additional relevant factual findings and issue an order concerning whether either appellant's actions following the civil division's final judgment constitute 'acceptance and use' of payment pursuant to § 506(c)."

¶ 7.     On remand, the parties agreed that the issue could be resolved on summary judgment and the Agency so moved. Vallee and CCH opposed the motion, arguing that: (1) the question of whether Vallee "used" the Agency's initial payment was moot because the Agency later issued a higher revised valuation of Vallee's property interest; (2) defendants' actions in depositing the Agency's checks did not constitute "use" under § 506(c); (3) a genuine dispute of material fact as to whether defendants " 'used' the funds" precluded summary judgment; (4) the Agency was required to establish that defendants knowingly, intelligently, and voluntarily waived the constitutional and statutory right to contest necessity and public purpose on appeal to this Court and had not done so; and (5) § 506(c) is unconstitutional on its face and as applied.

¶ 8.     The following facts were undisputed for purposes of summary judgment. On March 17, 2022, the Agency sent Vallee's counsel a check for $750. The mailing included a cover letter with the subject line "RE: Colchester HES NH 5600(14), Parcel Number 14." The body of the letter identified the enclosed check and stated that it was "issued in compliance with a

4

Condemnation Order dated 02/25/2022." The check's invoice field read "RLCONDEMN14." Vallee deposited the check into its operating account on April 12, 2022. In June 2022, Vallee placed $750 in a trust account, and in July 2022 Vallee sent the Agency a check from the trust account for the same amount. However, the Agency returned Vallee's check.

¶ 9. The Agency sent Hampton Inn/Hilton Co., which is owned by CCH, a check for $56,788.05 on April 19, 2022, and a check for $26,411.95 the following day. Each mailing included a cover letter with the subject line "Colchester HES NH 5600(14), Parcel Number: 9." The body of both letters identified the enclosed check and indicated that it was "issued in compliance with a Condemnation Order dated 2/25/2022," and the invoice field of both checks read "CONDCRYSCLEA9." CCH deposited the checks on April 28 and May 2, 2022.

¶ 10. On the basis of these undisputed facts, the civil division granted the Agency's motion for summary judgment. It held that the question presented was not moot as to Vallee and that defendants' actions constituted "acceptance and use" of the Agency's payments under § 506(c). The court rejected defendants' waiver argument, found the asserted factual dispute immaterial, and declined to reach defendant's constitutional challenge as beyond the scope of our remand. This appeal followed.

¶ 11. On appeal, defendants raise the same contentions presented in opposition to summary judgment below, except that CCH—alleging that the Agency has now confirmed that CCH will also receive a supplemental payment in connection with the judgment of condemnation—joins Vallee's mootness argument. We review a decision on a motion for summary judgment de novo, applying the same standard as the trial court: summary judgment must be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." V.R.C.P. 56(a); see also Energy Pol'y Advocs. v. Att'y Gen.'s Off., 2023 VT 43, ¶ 6, __ Vt. __, __ A.3d __. The civil division's

interpretation of § 506(c) also presents a question of law that we review de novo. In re S. Burlington-Shelburne Highway Project, 174 Vt 604, 605, 817 A.2d 49, 51 (2002) (mem.).

¶ 12. We turn first to defendants' mootness argument. "A case becomes moot—and this Court loses jurisdiction—when there no longer is an actual controversy or the litigants no longer have a legally cognizable interest in the outcome of the case." Paige v. State, 2017 VT 54, ¶ 7, 205 Vt. 287, 171 A.3d 1011 ("[E]ven if a case was not moot when it was first filed, intervening events since its filing can render it moot."). Defendants contend that the issue of whether their actions with respect to the Agency's March and April 2022 payments gave rise to the § 506(c) bar has become moot because the Agency issued a revised valuation of Vallee's property interest and subsequently tendered a supplemental check for the difference between the earlier payment and the revised valuation, which Vallee returned to the Agency,[1] and indicated that it will likewise tender an additional payment to CCH in connection with the condemnation of its property, which CCH also plans to reject. Defendants argue that whatever the legal significance of their actions with respect to the Agency's initial payments, they have not accepted and used the entirety of the compensation that the Agency now agrees it owes, and therefore the § 506(c) bar does not apply.

¶ 13. In interpreting a statute, our paramount goal is to discern and implement the Legislature's intent. Miller v. Miller, 2005 VT 89, ¶ 14, 178 Vt. 273, 882 A.2d 1196. To this end, we look first to the statutory language, presuming that the Legislature intended the plain, ordinary meaning of the words it selected. Shires Hous., Inc. v. Brown, 2017 VT 60, ¶ 9, 205 Vt. 186, 172 A.3d 1215. "If the statute is unambiguous and the words have plain meaning, we accept and

---

[1] Defendants filed a motion to supplement the record with two exhibits in support of this assertion: a letter from the Agency to Vallee enclosing a check for the supplemental payment prompted by the revised valuation, and a letter from Vallee to the Agency declining to accept the payment and returning the check. Given our conclusion that a property owner's repudiation of a supplemental payment cannot revive the right to contest necessity and public purpose once lost under § 506(c), see infra, ¶ 14, these materials have no bearing on our analysis. The motion is therefore denied.

enforce that plain meaning as the intent of the Legislature, and our inquiry proceeds no further." S. Burlington-Shelburne Highway Project, 174 Vt. at 605, 817 A.2d at 51.

¶ 14. The plain language of the statute cannot sustain defendants' mootness argument. Section 506(c) provides that an owner's "acceptance and use of a payment under this section does not affect his or her right to contest or appeal damages under sections 511-513 of this chapter but shall bar the owner's right to contest necessity and public purpose." The statute thus contemplates that while acceptance and use of "a payment" precludes further contest of necessity and public purpose, the same payment may later be determined to fall short of the full amount owed, obligating the Agency to issue a supplemental payment. See id.; see also id. § 512(a) ("Within 30 days of a final decision on damages and the exhaustion or expiration of all appeal rights, the Agency shall pay or tender the owner the amount, if any, by which the award to the person exceeds the amount previously paid or tendered by the Agency."). Because the statute contemplates that acceptance and use of an incomplete payment may give rise to the statutory bar, defendants' mootness argument is without merit.[2] While rejecting an initial payment preserves an owner's right to contest necessity and public purpose, rejecting a supplemental payment does not revive that right once lost under § 506(c). Therefore, the issue of whether defendants' actions with respect to the Agency's initial payments constituted "use" under § 506(c) is not moot.

---

[2] The Agency indicates that it issued its revised valuations in compliance with 49 C.F.R. § 24.102(g), a federal regulation requiring state agencies seeking to acquire property for certain programs or projects to "promptly reestablish just compensation and offer that amount to the owner in writing" where a significant delay has occurred since the property was appraised and a subsequent appraisal "indicates that a change in the purchase offer is warranted." See also id. § 24.101. Defendants argue that offers of payment made in connection with § 24.102(g) are therefore not "supplemental payments," but instead attempts to "reestablish just compensation," and suggest that this should alter our mootness analysis. Because this argument was raised for the first time in defendants' reply brief, we do not consider it. Robertson v. Mylan Lab'ys, Inc., 2004 VT 15, ¶ 2 n.2, 176 Vt. 356, 848 A.2d 310 ("We need not consider an argument raised for the first time in a reply brief.").

¶ 15. We now consider that question. Defendants do not contest that depositing the Agency's checks into their respective accounts demonstrated "acceptance," but argue that this action did not constitute " 'use' of the funds" because "use" requires some different and more substantial action.

¶ 16. Defendants frame the analysis incorrectly in contending that they did not use the "funds" tendered by the Agency. The § 506(c) bar arises from "acceptance and use of a payment," not acceptance and use of funds received by virtue of that payment. Therefore, we must determine whether depositing a check is "use of a payment." See id. Because the statute does not define the term "use," we afford it its "plain and ordinary meaning, which may be obtained by resorting to dictionary definitions." Franks v. Town of Essex, 2013 VT 84, ¶ 8, 194 Vt. 595, 87 A.3d 418. The noun "use" is defined as, among other things, "the fact or state of being used," and definitions of the verb form include "to put into action or service . . . avail oneself of," "to expend or consume by putting to use," and "to carry out a purpose or action by means of." Use, Merriam-Webster Online Dictionary, https://www.merriam-webster.com/ dictionary/use [https://perma.cc/ZX52-XHDL]. Depositing a check is a means of "avail[ing] oneself of" a payment. The payment is thereby "put into action or service" because control of the amount paid passes from the issuer of the check to the payee, who gains exclusive access to those funds upon deposit. The payee's account balance is altered "by means of" the payment. The payment itself is "expend[ed] or consume[d]" because the check, once deposited, is no longer a negotiable instrument. Thus, an interpretation of § 506(c) under which depositing a check is one "use" of a payment is consistent with the plain and ordinary meaning of the term.[3]

---

[3] Defendants cite two federal criminal case in support of the contention that "use" requires intent and argue that Vallee's July 2022 attempt to return the Agency's check demonstrated a lack of such intent. See Jones v. United States, 529 U.S. 848, 855 (2000); United States v. Aguilar-Alonzo, 944 F.3d 544, 550 n.3 (5th Cir. 2019). This argument, too, was raised for the first time in defendants' reply brief and we therefore do not consider it. See Robertson, 2004 VT 15, ¶ 2 n.2.

¶ 17. Without further analysis, defendants cite a dozen cases from other jurisdictions for the proposition that "acceptance" or "deposit" of a check or other tendered funds is factually and legally distinct from "use" of that payment. However, none of these cases involve interpretation of the term "use"; instead, it appears that defendants rely upon them because in each, a court employed the word "use" and the words "deposit" or "acceptance"—or both—in a single sentence. See United States v. Friedman, 971 F.3d 700, 717 (7th Cir. 2020); United States v. Diaz, 245 F.3d 294, 307 (3d Cir. 2001); United States v. Pointon, 590 F. App'x 920, 927 (11th Cir. 2014) (per curiam); Miller v. Simpson, 325 F. App'x 25, 26 (2d Cir. 2009) (summary order); Sec. Pest Control, Inc. v. Wells Fargo Bank, Nat'l Ass'n, 532 F. Supp. 3d 1221, 1233 (M.D. Ala. 2020); Weststeyn Dairy 2 v. Eades Commodities Co., 280 F. Supp. 2d 1044, 1080 (E.D. Cal. 2003); Metzger v. Am. Food Mgmt., Inc., 389 F. Supp. 469, 471 (W.D. Pa. 1975); Hebbeler v. First Mariner Bank, No. CV ELH-17-3641, 2019 WL 11639469, at *2 (D. Md. Apr. 17, 2019); United States v. Hunte, No. 1:17-CR-193-WSD-2, 2018 WL 11239083, at *3 (N.D. Ga. Apr. 5, 2018); Resource Recovery Sys., LLC v. City of Ann Arbor, No. 2:16-CV-12771, 2017 WL 11518663, at *3 (E.D. Mich. Aug. 31, 2017); In re VeraSun Energy Corp., No. 08-12606(BLS), 2009 WL 7215683, at *8 (Bankr. D. Del. Apr. 9, 2009); In re Londa, 283 A.2d 328, 329 (N.J. 1971) (per curiam). We have no doubt that in some contexts, the words "acceptance," "deposit," and "use" may carry distinct meanings, but this does not mean that in no circumstances may depositing a check constitute "use" of a payment. As a result, these cases have no bearing on our analysis.

¶ 18. Defendants argue that interpreting the statute to mean that depositing a check can constitute both "acceptance" and "use" would render the word "use" surplusage. See In re Margaret Susan P., 169 Vt. 252, 263, 733 A.2d 38, 47 (1999) (explaining that we must "avoid a statutory construction that would render part of the statutory language superfluous"). They also posit that the Legislature would have simply replaced the phrase "acceptance and use" with the word "deposit"—which appears in other statutes—if it intended for the § 506(c) bar to arise from

9

the act of depositing a check. See <u>Daniels v. Vt. Ctr. for Crime Victims Servs.</u>, 173 Vt. 521, 523, 790 A.2d 376, 379 (2001) (mem.) ("Where the Legislature has demonstrated that it knows how to provide explicitly for the requested action, we are reluctant to imply such an action without legislative authority."). However, both of these arguments rest on an assumption not supported by the statute: that a property owner will in every case receive the Agency's payment directly by check and subsequently be faced with a binary choice between depositing or not depositing that check.

¶ 19.   The § 506(c) bar arises from acceptance and use of "a payment under this section." 19 V.S.A. § 506(c). Section 506 provides that the Agency may make payment in several ways. Following the issuance of a judgment of condemnation, the Agency must either "tender to the property owner, or deposit with the court, the amount of the offer of just compensation . . . or any other amount agreed to by the owner." <u>Id</u>. § 506(a)(1)(B). But "if an interested person has not provided the Agency identification information necessary to process payment, or if an interested person refuses an offer of payment, payment shall be deemed to be tendered when the Agency makes payment into an escrow account that is accessible by the interested person." <u>Id</u>. § 506(a)(2); see also <u>Agency of Transp.</u>, 2020 VT 73, ¶¶ 13-14 (concluding that " 'property owner' and 'interested person' are interchangeable terms in the condemnation chapter"). It is thus clear that the Legislature intended § 506(c) to apply not only to payments tendered directly to the property owner, but also to payments deposited with the court or placed in an escrow account. Where payment is deposited with the court or placed in an escrow account, the property owner has no check to deposit, and must take some affirmative action in "acceptance" of the Agency's payment before such payment becomes available for "use." Nor is deposit the only means by which a payment tendered by check may be used: the recipient of a check may instead choose to cash the check or sign it over to another. Given that a payment under § 506 can be put to use even where

10

it is never deposited by the payee, the term "deposit" would be underinclusive as a substitute for the word "use."

¶ 20. Because depositing a check is neither the only means by which a payment may be accepted nor the only means by which a payment may be used, an interpretation of § 506(c) under which depositing a check may constitute both "acceptance" and "use" of a payment does not render the word "use" superfluous, and we cannot conclude that the Legislature would have replaced "acceptance and use" with "deposit" if it intended for deposit to constitute both acceptance and use. The civil division did not err in holding that the undisputed actions defendants took with respect to the Agency's payments constituted "acceptance and use" of those payments under § 506(c).

¶ 21. In the alternative, defendants argue that they submitted affidavits giving rise to a genuine dispute of material fact as to whether they " 'used' the funds." CCH's affidavit reflects that while CCH deposited the Agency's checks, the "funds . . . have not been used and are fully available in our bank account." Vallee indicated in its affidavit that it confused the Agency's check with a different check it anticipated receiving from the Agency in connection with a separate highway project and mistakenly deposited it into its operating account, but "did not use the funds," because the account "always had $750 in it."

¶ 22. However, these factual disputes were immaterial to the question presented on summary judgment. See V.R.C.P. 56(a) (providing that only disputes of "material" fact preclude summary judgment). As noted above, the issue was not whether defendants used the "funds" placed in their accounts by virtue of the Agency's payments, but instead whether they used the Agency's payments when they deposited its checks into their accounts. See 19 V.S.A. § 506(c). Defendants do not dispute that they deposited the Agency's checks into their accounts, and these actions constituted "acceptance and use of a payment" within the meaning of § 506(c) as a matter of law. Defendants' affidavits do not serve to transform this legal question into a factual issue

11

precluding summary judgment. See, e.g., Civetti v. Turner, 2022 VT 64, ¶ 22, __ Vt. __, 296 A.3d 132 (rejecting party's attempt to "repackage a legal question as a factual one in hopes of staving off summary judgment").

¶ 23. Next, defendants argue they have constitutional and statutory rights to contest necessity and public purpose on appeal to this Court, and the Agency was therefore required to show that they knowingly, intelligently, and voluntarily waived those rights but failed to do so. They cite a single case, West v. North Branch Fire District #1, in support of the proposition that the Agency bears the burden to make this showing before § 506(c) may operate according to its terms. 2021 VT 44, 215 Vt. 93, 257 A.3d 856. While we explained in West that "[a] party may 'waive virtually any right, constitutional or statutory, as long as the waiver is knowing, intelligent, and voluntary,' " the circumstances under which we invoked this principle were very different from those present here. 2021 VT 44, ¶ 52 (quoting State v. Hance, 157 Vt. 222, 224, 596 A.2d 365, 366 (1991)). In West, an employer argued that its former employee waived his statutory right to total and permanent disability benefits where he maintained that an amendment to that statute applied retroactively and he was entitled to benefits thereunder, but conceded that he could not make out a prima facie case for benefits under the preamendment version of the statute in order to pursue an appeal of the court's retroactivity determination. Id. ¶¶ 52-55 (holding record "exceedingly clear that although [former employee] took the unusual step of asking for summary judgment in [employer's] favor, he did not waive his right to benefits" under statute).

¶ 24. In contrast, the Agency argues here that defendants are barred from exercising the rights at issue because defendants engaged in conduct the Legislature expressly provided would give rise to such bar. See 19 V.S.A. § 506(c). Defendants have offered no support for the proposition that a showing of knowing, intelligent, and voluntary waiver is required in such circumstance. To the contrary, the principle that "ignorance of the law does not excuse an individual or company from compliance with its provisions is of unquestioned application in

12

Vermont both in civil and in criminal cases." In re Constr. & Operation of a Meteorological Tower, 2019 VT 20, ¶ 21 n.6, 210 Vt. 27, 210 A.3d 1230 (quotation omitted).  The federal Supreme Court has explained that this maxim carries special weight where the statute at issue pertains to the condemnation of land, because "[s]uch statutes are universally in force and are general in their application, facts of which the land owner must take account in providing for the management of his property and safeguarding his interest in it."  N. Laramie Land Co. v. Hoffman, 268 U.S. 276, 283 (1925); see also Texaco, Inc. v. Short, 454 U.S. 516, 532 (1982) ("It is well established that persons owning property within a state are charged with knowledge of relevant statutory provisions affecting the control or disposition of such property."); Anderson Nat. Bank v. Luckett, 321 U.S. 233, 243 (1944) ("The statute itself is notice . . . .   All persons having property located within a state and subject to its dominion must take note of its statutes affecting the control or disposition of such property and of the procedure which they set up for those purposes.").

¶ 25.    In addition to being charged with knowledge of § 506(c), Vallee and CCH were each represented by counsel.  They received the Agency's checks shortly after the civil division issued a judgment order which conspicuously warned that acceptance and use of such payments would bar further contest of necessity or public purpose under § 506(c).  The Agency's payments referenced that judgment order by date and bore the project name and parcel designations used by the Agency throughout the underlying condemnation proceedings.  Defendants have identified no basis to conclude that the Agency was required to show knowing, intelligent, and voluntary waiver in order to invoke § 506(c) under these circumstances.

¶ 26.    Finally, defendants argue that § 506(c) is unconstitutional on its face and as applied because it is designed to cause involuntary waivers of the constitutional and statutory right to challenge necessity and public purpose.  However, defendants' briefs do not acknowledge that the civil division concluded that their constitutional argument was beyond the scope of our remand and therefore did not address it.  Because defendants failed to assign error to the court's decision

13

in this regard, they have waived their constitutional argument on appeal.  Nesti v. Vt. Agency of Transp., 2023 VT 1, ¶¶ 21-22, __ Vt. __, 296 A.3d 729 ("For [plaintiff], not assigning error to the civil division's failure to address her constitutional arguments results in waiver in this Court."); V.R.A.P. 28(a) (requiring that appellant's principal brief contain, among other things, "specific claims of error").  As a result, we do not address its merits.

Affirmed.

FOR THE COURT:

_____
Associate Justice