## Agency of Transportation v. Wall Management, et al.

[481 A.2d 1270]

No. 82-496

Present: Billings, C.J., Hill, Underwood, Peck and Gibson, JJ.

Opinion Filed August 3, 1984

*John J. Easton, Jr.*, Attorney General, and *Robert C. Schwartz*, Assistant Attorney General, Montpelier, for Plaintiff-Appellee.

*John E. McCamley* of *Abatiell and Abatiell,* Rutland, for Defendants-Appellants Dorr.

Billings, C.J. Defendants appeal from a judgment of the Bennington Superior Court holding that "the necessity of the State requires the taking of land and rights of others . . . ." in order to reconstruct and widen that portion of routes 11 and 30 which combine to run through the town of Manchester, Vermont. The proposed project calls for reconstructing the road subbase and widening .06 of a mile of routes 11 and 30 to provide for a twelve foot eastbound lane, a twelve foot westbound lane, and a twelve foot center lane for left hand turns in both directions. Sidewalks also will be constructed on both sides of the widened roadway. Defendants, whose property will be taken under the proposed reconstruction project, claim that the finding of necessity is not supported by the evidence. Specifically, they argue that due consideration was not given to (1) alternative routes, (2) effect upon the environment, (3) economic impact and (4) public safety.

 Under 19 V.S.A. § 221(1), necessity is defined as:

a reasonable need which considers the greatest public good and the least inconvenience and expense to the condemning party and to the property owner.

This Court has previously stated that the term "necessity," as used in the statute, does not mean an absolute or imperative necessity "but only that the taking be reasonably necessary to the accomplishment of the end in view under the particular circumstances." *Cersosimo* v. *Town of Townshend*, 139 Vt. 594, 597, 431 A.2d 496, 498 (1981); *Latchis* v. *State Highway Board*, 120 Vt. 120, 123, 134 A.2d 191, 194 (1957). The question is a narrow one of fact concerning the necessity of taking the particular land in question, *Latchis* v. *State Highway Board, supra*, 120 Vt. at 124, 134 A.2d at 194, and is to be determined exclusively by the trial court. *Pillsbury* v. *Town of Wheelock*, 130 Vt. 242, 244, 290 A.2d 42, 44 (1972). If the findings of the court on this issue are supported by any competent evidence, *State Highway Board* v. *Coburn*, 125 Vt. 513, 515, 219 A.2d 582, 584 (1966), and the excepting party cannot demonstrate an abuse of the court's discretion, the findings must stand. *Cersosimo* v. *Town of Townshend, supra*, 139 Vt. at 597, 431 A.2d at 498.

 The statute gives the state highway board broad discretion, "in determining what land it deems necessary for the particular location and route to be followed . . . .", *Latchis* v. *State Highway Board, supra*, 120 Vt. at 125, 134 A.2d at 195, and we will not interfere with that determination as long as it is made in good faith and is not capricious. *Id.*

Turning to the issues raised on appeal, the defendants first argue that no consideration was given to the "adequacy of other property and locations" as required by 19 V.S.A. § 221. A reading of the transcript reveals, however, that the proposed project was, in fact, an alternative design to one originally proposed. The town manager for the town of Manchester testified that the project as originally planned would have involved the construction of a four-lane highway. This design was "dropped back to a three [lane proposal] with a center left-turn lane, therefore" limiting the amount of property that would be taken.

■ Additionally, the highway project under consideration does not involve new highway construction where consideration of alternative routes is both practical and necessary. Rather, the project contemplates structural as well as traffic and pedestrian flow improvements to an existing roadbed. Testimony of the Agency of Transportation's construction engineer and research and economics engineer established that the section of road slated for repair was structurally unsound and represented a safety hazard. Under the state's highway sufficiency rating system, this section of roadway is rated in the lowest sufficiency category due primarily to its structural deficiency. Further, vehicular traffic along this section of road is expected to increase from a 1981 count of 7,600 vehicles per day to approximately 11,000 per day by the year 2004. In addition, the State's engineer testified that even if the project were redesigned to omit one or both proposed new sidewalks, the amount of property taken would remain substantially the same. This is because the three-lane road still would require the "same width of reconstruction" due to the need for adequate shoulders, snow storage space and utility accommodation. Finally, the project calls for a three-lane design, with a center turning-only lane in order to reduce the specific traffic problems created by the current two-lane road. Those problems include the backing up and congestion of through traffic behind vehicles turning off the two-lane road and the sudden stopping of turning vehicles with resulting "fender-bender" accidents. On these facts we find that the "adequacy of other property and locations" criterion of 19 V.S.A. § 221 has been satisfied.

■ Defendants next argue that the court's findings concerning environmental impact were "speculative" and constitute error. The defendants' specific complaint is that approval from the Department of Water Resources for storm drains, to be placed in the road for surface water run-off into the Battenkill River, had not as yet been obtained. The court, in its findings, stated that problems in obtaining approval were not anticipated. The testimony of the State's engineer was that approval was being sought, and that the Department of Water Resources had "never refused a permit" for the particular drainage system called for in the project. Such testimony, at first glance, tends to support the defendants' contention that

it was premature of the court to find necessity before assuring itself that the requisite permit had been obtained. However, the engineer also testified, in response to a question from the bench, that the Agency of Transportation could not undertake the proposed project without first obtaining the Water Resources permit. On these facts, we think the court's finding must stand as it was not "clearly erroneous and without factual support." *Monti* v. *Town of Northfield,* 135 Vt. 97, 100, 369 A.2d 1373, 1376 (1977).

■■ The defendants also complain that the economic impact of the project on the town grand list was not properly considered. The court found that the effect on the grand list was "minimal." The testimony of the chief real estate appraiser for the Agency of Transportation was that the project would cause a tax loss of $335.28 or .06 percent of the grand list. No evidence rebutting this testimony was presented. The court's finding was proper. In addition, the defendants argue that the cost of utility relocation would have an overall detrimental economic impact. Under 19 V.S.A. § 221(1) and (2), however, the court is not required to look into the cost of utility relocation. Such costs do not directly accrue from the taking of defendants' property. *City of Winooski* v. *State Highway Board,* 124 Vt. 496, 498–99, 207 A.2d 255, 258 (1965).

■■ Defendants' last argument revolves around the issue of public safety. Although the court is not statutorily required to give due consideration to public safety, we have held that in the determination of "whether a reasonable necessity exists with respect to highways, public safety has become the critical element." *State Transportation Board* v. *May,* 137 Vt. 320, 323, 403 A.2d 267, 269 (1979). The defendants do not, however, point to any evidence that contravenes the State's evidence demonstrating the benefit to public safety that will result from the highway project; rather, they simply disagree with the evidence presented by the State at the hearing below. "The function of this Court . . . is not to weigh the evidence nor to review its sufficiency further than to determine whether the findings below are supported by any competent or substantial evidence." *Latchis* v. *State Highway Board, supra,* 120 Vt. at 125, 134 A.2d at 195. An engineer from the Agency of Transportation testified that combined routes 11 and 30, as presently

constructed, constitute a safety hazard. Evidence was presented that the roadway is structurally inadequate, requiring constant maintenance. Also, because the portion of roadway that will be affected by the project runs through a commercial district, there is heavy vehicular traffic. Both turning and through traffic use the existing two-lane road, creating heavy through-traffic "stacking" whenever cars need to turn off the road. The State's research and economics engineer testified that the accident rate for the section of road was almost double the state average and was considered "a high accident location." Additionally, there is heavy pedestrian traffic and only partial sections of sidewalk along the affected road. By reconstructing the road's subbase, adding a center lane for turning traffic only, and constructing full length sidewalks along both sides of combined routes 11 and 30, these problems will be alleviated. We think the evidence clearly demonstrates that both vehicular and pedestrian safety will improve as a result of the proposed project.

The record demonstrates that the state highway board sustained its burden of proof below of the necessity of the taking required for the proposed routes 11 and 30 project, 19 V.S.A. § 227 (a), and that therefore the order of the court was proper.

*Affirmed.*