NOTICE: This opinion is subject to motions for reargument under V.R.A.P. 40 as well as formal revision before publication in the Vermont Reports. Readers are requested to notify the Reporter of Decisions by email at: JUD.Reporter@vtcourts.gov or by mail at: Vermont Supreme Court, 109 State Street, Montpelier, Vermont 05609-0801, of any errors in order that corrections may be made before this opinion goes to press.

2024 VT 83

No. 22-AP-078

| | |
|---|---|
| Agency of Transportation | Supreme Court |
| | |
| | On Appeal from |
| v. | Superior Court, Chittenden Unit, |
| | Civil Division |
| | |
| Timberlake Associates, LLC et al. | October Term, 2024 |
| (R.L. Vallee, Inc. & Crystal Clear Hospitality, LLC) | |

Samuel Hoar, Jr., J.

Charity R. Clark, Attorney General, and Mark Seltzer, Assistant Attorney General, Montpelier, for Plaintiff-Appellee.

Pietro J. Lynn and Sean M. Toohey of Lynn, Lynn, Blackman & Toohey, P.C., Burlington, for Defendant-Appellant Timberlake Associates.

Liam L. Murphy of MSK Attorneys, for Appellant Crystal Clear Hospitality, and Alexander J. LaRosa of MSK Attorneys, Burlington, for Defendant-Appellant R.L. Vallee, Inc.

PRESENT: Reiber, C.J., Eaton, Carroll, Cohen and Waples, JJ.

¶ 1.     **CARROLL, J.**  Landowner Timberlake Associates, LLP[1] appeals the trial court's determination of necessity for takings of land by the Vermont Agency of Transportation (AOT) in connection with a highway reconstruction project. Landowner argues the trial court erred in its determination of necessity and AOT failed to fulfill its pre-suit obligation to negotiate pursuant to

---

[1] R.L. Vallee, Inc. (Vallee) and Crystal Clear Hospitality, LLC (CCH) are no longer parties to this appeal. Our decision in Agency of Transp. v. Timberlake Associates, LLC, 2024 VT 14, __ Vt. __, 315 A.3d 967, resolved the arguments raised by appellants Vallee and CCH in this case. Landowner remains as the sole appellant.

19 V.S.A. § 503(c). We conclude the court acted within its discretion in making its determination of necessity and that AOT satisfied its pre-suit obligation to negotiate with landowner, and thus affirm the decision below.

¶ 2.     This appeal concerns AOT's proposed project to reconstruct the interchange between Interstate 89 and U.S. Routes 2 and 7 in Colchester, Vermont into a proposed Diverging Diamond Interchange (DDI). Landowner owns a gas station located on the southeast corner of the interchange. The proposed project will rotate the northern driveway of landowner's parcel to accommodate the limited-access ramps to the highway and install a sidewalk along the edge of the parcel.

¶ 3.     In 2019, AOT filed a complaint in the superior court seeking a determination of necessity for the proposed project. See 19 V.S.A. § 504(a) (outlining procedures when "property owner has not entered into an agreement stipulating to the necessity of a taking"). After a four-day evidentiary hearing in April and June 2021, the trial court issued a written decision in February 2022 concluding landowner failed to demonstrate bad faith or abuse of discretion by AOT and that AOT satisfied its burden of demonstrating the necessity of taking landowner's property to the extent proposed. This appeal followed.

¶ 4.     The Court placed the appeal on waiting status pending our decision in Agency of Transportation v. Timberlake Associates, LLC. See 2024 VT 14, ¶ 20 (holding appellant's Vallee and CCH were barred from contesting the necessity and public purpose of the project because they accepted and used payment from AOT, pursuant to 19 V.S.A. § 506(c)). Following the issuance of that decision, which resolved Vallee's and CCH's arguments in this appeal, we removed this appeal from waiting status.[2]

---

[2] In its principal brief, landowner adopted by reference the briefs of Vallee and CCH pursuant to Vermont Rule of Appellate Procedure 28(f). Rule 28(f) provides: "In a case involving more than one appellant . . . any party may adopt by reference a part of another's brief." This case

¶ 5.     We first consider landowner's claim that the court erred in finding necessity for the proposed takings here. "A finding of necessity for condemnation is a question of fact determined exclusively by the trial court." In re S. Burlington-Shelburne Highway Project, 174 Vt. 604, 606, 817 A.2d 49, 52 (2002) (mem.). The trial court "presume[s] that [AOT's] determination of the necessity for and public purpose of a project is correct, unless a party demonstrates bad faith or abuse of discretion" by AOT. 19 V.S.A. § 505(a)(3)(A). The trial court reviews de novo AOT's "determination of the need to take a particular property and to take it to the extent proposed." Id. § 505(a)(3)(B). On appeal, we must accept the trial court's findings on necessity if they "are supported by any competent evidence." S. Burlington-Shelburne Highway Project, 174 Vt. at 606, 817 A.2d at 52 (quotation omitted). The statute gives AOT "broad discretion in determining what land it deems necessary for the particular location and route to be followed and we will not interfere with that determination as long as it is made in good faith and is not capricious." Agency of Transp. v. Wall Mgmt., 144 Vt. 640, 643, 481 A.2d 1270, 1272 (1984) (alteration and quotation omitted) (citation omitted).

¶ 6.     Necessity refers to both the "reasonable need for the highway project in general" and the "need to take a particular property and to take it to the extent proposed." 19 V.S.A. § 501(1). "Necessity" is defined as "a reasonable need that considers the greatest public good and the least inconvenience and expense to the condemning party and to the property owner" but is not "measured merely by expense or convenience to the condemning party." Id. We have recognized "the term 'necessity,' as used in the statute, does not mean an absolute or imperative necessity but only that the taking be reasonably necessary to the accomplishment of the end in view under the particular circumstances." Wall Mgmt., 144 Vt. at 643, 481 A.2d at 1272 (quotation omitted). The Legislature has directed that "[i]n determining necessity, consideration shall be given to"

no longer involves more than one appellant. As such, we have not considered any arguments raised in Vallee's or CCH's briefs in this appeal.

3

seven factors: (1) "adequacy of other property and locations"; (2) "quantity, kind, and extent of cultivated and agricultural land that may be taken or rendered unfit for use"; (3) "effect upon home and homestead rights and the convenience of the owner of the land"; (4) "effect of the highway upon the scenic and recreational values of the highway"; (5) "need to accommodate present and future utility installations"; (6) "need to mitigate the environmental impacts"; and (7) "effect upon town grand lists and revenues." 19 V.S.A. § 501(1).

¶ 7.    Landowner argues AOT failed to present evidence showing it considered the necessity factors set forth in 19 V.S.A. § 501(1). Landowner's argument is belied by the record, which amply supports the trial court's conclusion that AOT satisfied its burden by presenting "unrebutted evidence that demonstrated that [AOT] amply and properly considered all of the statutory factors."

¶ 8.    Over the course of the four-day evidentiary hearing, AOT presented evidence on each of the statutory factors to the extent applicable.[3] AOT presented evidence that it considered the "adequacy of other property and locations." Id. § 501(1)(A). The trial court reviewed AOT's commissioned scoping study, which evaluated alternative project designs, and the project manager testified AOT selected the DDI design because it outperformed the other options. AOT also presented evidence that it considered the project's effect on convenience to landowner. AOT's project manager testified the original plans for the DDI design were modified to minimize impacts to landowner's gas station, particularly access to the gas pumps, while also optimizing the traffic flow. The court also heard testimony as to the effect of the scenic and recreational values of the highway through testimony by the project manager about landscaping improvements, updating old signage, pedestrian and cyclist access to the interchange, and updating the current lighting systems. AOT's project manager also testified that AOT considered the environmental impacts of the

---

[3] The parties agree the proposed project does not involve active farmland and the effect on utilities was not implicated.

4

project, including permitting and stormwater management. In addition, the scoping study discussed relevant and necessary permitting and maintenance. Finally, the right-of-way-appraisal chief testified that the project would have minimal effect on the town's grand list. Accordingly, competent evidence supports the trial court's conclusion that AOT considered the statutory factors, which in turn supports AOT's determination of necessity. See Wall Mgmt., 144 Vt. at 645, 481 A.2d at 1273 (affirming necessity determination because defendant failed to "point to any evidence that contravenes the State's evidence" but rather "disagree[ed] with the evidence presented").

¶ 9. Landowner argues the trial court erred because it focused "only on the necessity of the improvements to [the interchange] rather than the necessity of the taking[]" of the particular property. Landowner does not dispute the necessity of the improvements to the interchange, but challenges AOT's decision to select the DDI design over alternative proposals. Specifically, landowner argues the trial court failed to weigh the adequacy of the conventional alternative design.

¶ 10. Nothing in the statute requires the trial court, in place of AOT, to review all the alternative options to the proposed project and choose the best one. See 19 V.S.A. § 505(a). Here, the trial court reviewed AOT's determination of necessity and concluded the taking related to landowner's parcel was necessary to maintain the safety features of the DDI design, while also addressing concerns raised by landowner. The court found the takings as related to landowner's parcel were unavoidable because they were necessary "to accommodate the proposed pedestrian facilities" as well as "the angle of U.S. Routes 2/7's northbound approach to the DDI." The trial court found AOT settled on the DDI design after studying alternative designs because the DDI design outperformed the other options. The court acknowledged landowner's concern that the realignment of the driveway would make exiting the gas station more difficult for large trucks and thus negatively impact landowner's business. However, the trial court found AOT minimized these impacts by "selecting the least-invasive approach angle" that maintained the safety features

5

of the DDI design while still allowing large trucks to maneuver to the fuel pumps and exit the gas station.

¶ 11.     The record supports the trial court's conclusion.  See Wall Mgmt., 144 Vt. at 645, 481 A.2d at 1273 (concluding "the court's finding must stand as it was not clearly erroneous and without factual support" (quotation omitted)).  The record shows AOT selected the DDI design because it would perform substantially better than the other alternatives by increasing capacity, reducing congestion, and improving safety.  The court heard testimony from the project manager that the DDI design "was most efficient for traffic movement compared to other alternatives." Vallee's expert also testified that the DDI design was "the safer operation."  Further, AOT altered its design to address landowner's concerns.  See Wall Mgmt., 144 Vt. at 643, 481 A.2d at 1272 (recognizing "proposed project was . . . an alternative design to one originally proposed" demonstrating considerations of adequate alternatives by AOT).

¶ 12.     Landowner asserts AOT presented only conclusory evidence as to why AOT selected the DDI design over other alternatives.  Specifically, landowner points to the project manager's testimony that he did not recall whether another alternative in the scoping study met the purpose of the project, stating, all he cares "about is what the preferred alternative was." Landowner argues that "[s]uch 'say so' testimony is insufficient as a matter of law to establish necessity for taking private property," citing to Borough of Glassboro v. Grossman, 200 A.3d 419 (N.J. Super. Ct. App. Div. 2019).  Grossman is inapposite, however, because it involved a proposed taking of land that might potentially be necessary for some possible future redevelopment project, as opposed to a particular project serving a particular purpose.  Id. at 430.  That is not the case here.  As discussed above, AOT presented sufficient evidence to support its determination that the DDI design was the preferred alternative for making the improvements necessary for the interchange.

6

¶ 13.   Finally, landowner argues AOT failed to comply with the statutory mandate to negotiate prior to filing suit and that the trial court's determination of necessity failed to address this argument.  Before commencing condemnation proceedings under 19 V.S.A. § 504, AOT is required to "make every reasonable effort to acquire property expeditiously by negotiation" after "prepar[ing] a written offer of just compensation."  19 V.S.A. § 503(b)-(c).  Landowner argues AOT failed to engage in reasonable negotiations with landowner because after making an offer of just compensation that landowner rejected, no one from AOT contacted landowner to engage in further negotiations.  The trial court did not specifically address AOT's negotiation efforts with respect to landowner.[4]  However, landowner has failed to demonstrate that this is grounds for reversal.  The statute does not require AOT to exhaust every possible option or to successfully negotiate with landowner; rather, it only requires AOT to make a reasonable effort to purchase the property expeditiously before commencing suit.   Here, AOT mailed an offer package to landowner.  See id. § 503(b).  Landowner's agent testified that in his opinion AOT "offered us a real low ball . . . laughable type offer."   AOT's right-of-way manager testified that from conversations with landowner, the parties did not agree on the value of the property.  It is evident from the record that further negotiations would be futile.  Under these circumstances, landowner has failed to demonstrate an abuse of discretion that would justify reversing the determination of necessity.

Affirmed.

FOR THE COURT:

_____

Associate Justice

---

[4]  The trial court found AOT made every reasonable effort to acquire the necessary rights from Vallee before filing its amended complaint but made no finding as to landowner Timberlake.

7