NOTICE: This opinion is subject to motions for reargument under V.R.A.P. 40 as well as formal revision before publication in the Vermont Reports. Readers are requested to notify the Reporter of Decisions by email at: Reporter@vtcourts.gov or by mail at: Vermont Supreme Court, 109 State Street, Montpelier, Vermont 05609-0801, of any errors in order that corrections may be made before this opinion goes to press.

2026 VT 1

No. 25-AP-125

| | |
|---|---|
| Mongeon Bay Properties, LLC | Supreme Court |
| | |
| | On Appeal from |
| v. | Superior Court, Chittenden Unit, |
| | Civil Division |
| | |
| Town of Colchester | October Term, 2025 |

Samuel Hoar, Jr., J.

Alexander J. LaRosa and John Mazzuchi of MSK Attorneys, Burlington, for Plaintiff-Appellee.

Brian P. Monaghan and Kristen E. Shamis of Monaghan Safar PLLC, Burlington, for Defendant-Appellant.


PRESENT: Reiber, C.J., Eaton and Cohen, JJ., and Tomasi, Supr. J., and Johnson, J. (Ret.), Specially Assigned


¶ 1.     **COHEN, J.**   Defendant Town of Colchester (Town) appeals the civil division's decision that the Town failed to prove that it needed to take plaintiff Mongeon Bay Properties, LLC's (Mongeon Bay) land to build a stormwater treatment facility. The Town argues that the civil division abused its discretion in denying the Town's petition for necessity because taking Mongeon Bay's property for this facility would help the Town meet phosphorus reduction regulatory requirements and reduce liability arising from the existing drainage pipe on the property. We affirm.

¶ 2.     A review of the record reveals the following. The Town seeks to condemn 885 East Lakeshore Drive, which is in the middle of a larger, unsubdivided parcel owned by Mongeon

Bay on the shore of Malletts Bay in Colchester. The property contains one of several residential camp structures, which Mongeon Bay leases to tenants. The property is burdened by an easement dating back to 1979 that permits the Town to place and maintain a stormwater drainpipe and catch basin. The Town has used the easement for that purpose since at least 1994, when it carried out substantial work on the property, including construction of a seawall and related infrastructure to protect the stormwater outfall pipe. In 2019, the Town-owned pipe that runs underneath the property ruptured, damaging the land and camp structure. Mongeon Bay sued the Town for damages and secured a settlement. In 2020, the Town repaired the pipe with a cured-in-place liner, which the Town's former Director of Public Works testified typically has a service life of thirty to fifty years. There has been no further damage to the property since the liner was put in place, even during major rainfalls in the summers of 2023 and 2024.

¶ 3.    In August 2021, the Town initiated condemnation proceedings for the property. It conducted a condemnation and compensation hearing in November 2021. In January 2022, the Town issued a proposed decision to condemn the property. The decision explained that the Town needed to take the property "to have improved access to the stormwater discharge point, to reduce ongoing maintenance and repair costs to an unorthodox stormwater outfall configuration, to install a stormwater treatment facility, to address a safety and liability issue created by the recent erosion and to mitigate potential hazards in the future."

¶ 4.    In February 2022, Mongeon Bay filed this action, seeking a declaratory judgment and injunction prohibiting the Town from taking the property. In response, the Town moved for a hearing to determine necessity pursuant to the condemnation statute[1], arguing that it needed to take the property "for the purpose of constructing, maintaining, operating, and repairing a

---

[1] At the time the Town moved for a hearing to determine necessity, the controlling statute was 24 V.S.A. § 3604. In 2024, this statute was renumbered to 24 V.S.A. § 3606. 2023, No. 143 (Adj. Sess.), § 13.

2

stormwater treatment facility to replace an existing [twenty-four-inch] stormwater outflow located at 885 East Lakeshore Drive." See 24 V.S.A. § 3606 (laying out procedural requirements when owner does not agree to convey interest in land to municipal authority and explaining that municipality must then petition trial court to set time and place to hear parties and determine necessity of taking).

¶ 5. The trial court held a two-day bench trial in October 2024. In a subsequent written decision, the court concluded that the Town did not meet its burden to prove the necessity of the taking. The court found that the Town did not prove that taking the land was in the public good or properly consider the inconvenience and expense to Mongeon Bay and the Town. Although the Town claimed that it needed the property to meet its obligations to reduce phosphorus runoff into Lake Champlain, the evidence did not show that the project was a reasonable means to further this goal. The court also found that the Town did not properly consider alternative sites. The Town had prepared a scoping study and phosphorus control plan, which looked at potential locations for phosphorus reduction projects, but the property was not identified in either the study or plan. The court concluded that the Town appeared to have first selected the site, then designed the project to fit the property, rather than assessing various alternatives and choosing a suitable site from among them. The court also found that the proposed taking was initiated in bad faith and concluded based on case law from other jurisdictions that this was a separate and independent basis for rejecting the Town's petition. The Town appeals.

¶ 6. The Town raises two primary challenges to the trial court's decision on appeal. First, the Town argues that the court erred in concluding that it failed to give due consideration to the relevant factors and therefore did not demonstrate necessity. Second, the Town claims that the court erred in finding that it acted in bad faith in attempting to take the property. Because we conclude that the court acted within its discretion in finding that the taking was unnecessary, we

3

do not address the court's holding that the petition must be rejected because the Town acted in bad faith.

¶ 7. A trial court's finding of necessity is "a question of fact which is to be determined exclusively by the trial court." Cersosimo v. Town of Townshend, 139 Vt. 594, 597, 431 A.2d 496, 498 (1981). This Court must accept the trial court's findings on necessity if they are supported "by any competent evidence," and must uphold the court's decision unless the court abused its discretion. Rossetti v. Chittenden Cnty. Transp. Auth., 165 Vt. 61, 67, 674 A.2d 1284, 1288 (1996) (quotation omitted). This Court has explained that "[a] trial court's factual findings will not be disturbed on appeal unless clearly erroneous when viewed in the light most favorable to the prevailing party" and "there is no credible evidence to support the finding." Jackson v. Jackson as Tr. for William Jackson Tr. of 1939 & the William Jackson Tr. of 1941, 2025 VT 29, ¶ 22, ___Vt.___, 342 A.3d 928 (quotation omitted); see also Agency of Transp. v. Wall Mgmt., 144 Vt. 640, 645, 481 A.2d 1270, 1273 (1984) (holding "the court's finding must stand as it was not clearly erroneous and without factual support" (quotation omitted)). "This Court gives due regard . . . to the opportunity of the trial court to judge . . . the credibility of the witnesses, and will accordingly defer to the court's determinations regarding the credibility of witnesses and . . . the persuasive effect of the evidence." Jackson, 2025 VT 29, ¶ 22 (quotation omitted).

¶ 8. Under Title 24, Chapter 101, a town is authorized to condemn private property to construct and maintain sewage and stormwater management systems if necessary to serve the public good. 24 V.S.A. §§ 3604, 3609. The Town has the burden to prove the necessity of the taking by a preponderance of the evidence. 24 V.S.A. § 3609(b); see Livanovitch v. Livanovitch, 99 Vt. 327, 328, 131 A. 799, 800 (1926) (explaining that when one has burden of proof in civil case, one must "establish his claim by a preponderance of the evidence"). The trial court shall "determine whether necessity requires the taking of land and rights and may modify or alter the proposed taking as the court may deem proper." 24 V.S.A. § 3609(d).

4

¶ 9.     Section 3601 of Title 24 defines "necessity" as follows:

"Necessity" means a reasonable need that considers the greatest public good and the least inconvenience and expense to the condemning party and to the property owner. Necessity shall not be measured merely by expense or convenience to the condemning party. Due consideration shall be given to the adequacy of other property and locations; to the quantity, kind, and extent of property that may be taken or rendered unfit for use by the proposed taking; to the probable term of unfitness for use of the property; to the effect of construction upon scenic and recreational values, upon home and homestead rights and the convenience of the owner of the land; to the effect upon town grand list and revenues.

Id. § 3601(4).

¶ 10.     This Court has not previously had occasion to interpret § 3601(4). We have, however, construed the similar definition of "necessity" in the statute governing condemnation of land for state highway projects, which is currently codified at 19 V.S.A. § 501. See, e.g., Wall Mgmt., 144 Vt. at 643, 481 A.2d at 1272 (interpreting "necessity" as defined for highway condemnations). That statute defines necessity as

a reasonable need that considers the greatest public good and the least inconvenience and expense to the condemning party and to the property owner. Necessity shall not be measured merely by expense or convenience to the condemning party. Necessity includes a reasonable need for the highway project in general as well as a reasonable need to take a particular property and to take it to the extent proposed.

19 V.S.A. § 501(1) (emphasis added). Like § 3601, 19 V.S.A. § 501(1) lists factors that the condemning party must consider, several of which are identical to those listed under § 3601(4). Both parties rely on § 501 for guidance in interpreting § 3601. Given the similar purpose and language of these statutes, we see no reason why our case law construing § 501 would not apply here.[2]

_____

[2]     One difference between the highway condemnation statute and the sewage and stormwater systems condemnation statute merits attention. Section 505 of Title 19 requires the trial court to "presume that the Agency's determination of the necessity for and public purpose of a project is correct, unless a party demonstrates bad faith or abuse of discretion on the part of the

¶ 11.    When interpreting necessity under 19 V.S.A. § 501(1), this Court has repeatedly explained that "a reasonable need" "does not mean an imperative, indispensable or absolute necessity but only that the taking be reasonably necessary to the accomplishment of the end in view under the particular circumstances." Cersosimo, 139 Vt. at 597, 431 A.2d at 498; see, e.g., Wall Mgmt., 144 Vt. at 643, 481 A.2d at 1272 (stating same); Rossetti, 165 Vt. at 66-67, 674 A.2d at 1288 (stating same). This Court has also explained that to show that due consideration was given to each statutory factor, the condemning party must "present[] evidence on each of the statutory factors to the extent applicable." Agency of Transp. v. Timberlake Assocs., LLC, 2024 VT 83, ¶¶ 7-8, ___ Vt. ___, 331 A.3d 1070 (affirming condemnation of land by Vermont Agency of Transportation in connection with highway reconstruction project because Agency "amply and properly considered all of the statutory factors" through "competent evidence").

¶ 12.    The Town argues the trial court erred in finding that the Town failed to meet its burden of proving the necessity of taking Mongeon Bay's property. The record does not support the Town's claim. At trial, the Town presented little to no evidence regarding several of the statutory factors. First, the Town did not present any evidence on how "the effect of construction" would impact "home and homestead rights and the convenience of the owner of the land." 24 V.S.A. § 3601(4). The Town made clear that constructing and operating the stormwater treatment facility would require taking the entire property and permanently removing the building on it. However, this does not relieve the Town of the obligation to present evidence showing how it considered the construction's impact on Mongeon Bay's rights and convenience—particularly because the property sits within a larger, unsubdivided parcel owned by Mongeon Bay.

---

Agency[, but] [t]he court shall review de novo the Agency's determination of the need to take a particular property and to take it to the extent proposed." 19 V.S.A. § 505(a)(3)(A)-(B). Chapter 101 of Title 24 requires no such deference to the condemning party.

6

¶ 13.    Second, the Town presented virtually no evidence about the proposed taking's "effect upon town grand list and revenues." Id. § 3601(4).  The only testimony related to this point was the opinion of the Town's former Director of Public Works that the facility would improve water quality and thereby increase the attractiveness and demand for property in Colchester, ultimately increasing the Town's grand list value.  The trial court evidently gave this testimony little weight, which was not an abuse of discretion.  There was no evidence that the former director was qualified to assess property values, and the Town offered no other evidence about how a single phosphorus removal project would impact property values townwide.

¶ 14.    Third, the Town presented very little evidence as to how it considered the "least inconvenience and expense . . . to the property owner."  Id. § 3601(4).  The former director testified that the stormwater pipe underneath the property was a liability risk for the Town and a safety risk for inhabitants on the property due to the pipe's unusual forty-five-degree bend.  He testified that this bend increased the risk of blockages and structural failure despite the cured-in-place liner, posing a risk to the structure and inhabitants above it and leaving the Town liable for any damages or injuries.  The Town's expert engineer witness similarly explained that the pipe was more likely to fail because of this bend and the pipe's steep slope.  However, the Town presented this potential pipe failure primarily as a liability for the Town and argued that it therefore would be in the public good to remove the pipe.  Other than the director and engineer's assertions regarding a potential pipe failure, the Town provided no evidence of the taking's potential impact on Mongeon Bay.

¶ 15.    Moreover, the trial court found, and we agree, that a potential pipe failure was a matter of speculation.  As the court explained, the Town presented "no evidence . . . from which the court could do more than speculate as to the likelihood of any such liability coming home to roost, or if it does, the amount of exposure."  The record showed only one claim against the Town since the easement was granted in 1979, which appeared to arise out of the Town's failure to

7

inspect and maintain the pipe, rather than the shape of the pipe or its location. Since the Town repaired the pipe with a cured-in-place liner, which had a service life of thirty to fifty years, there had been no further damage, making any future exposure purely speculative.

¶ 16. Finally, the Town failed to demonstrate that it sufficiently considered "the adequacy of other property and locations." 24 V.S.A. § 3601(4). The Town argues that it did conduct such an analysis, as demonstrated by its 2017 Malletts Bay Stormwater Management System & Transportation Scoping Study and its 2020 Phosphorus Control Plan. The 2017 study identified forty-nine separate watersheds for possible phosphorus removal projects, and the 2020 plan focused on thirty-four of those potential sites. However, as the trial court noted, neither the study nor plan identified the property at issue in this case as a location for a potential phosphorus removal project.

¶ 17. The Town contends that the property was considered in the 2017 study and 2020 plan because these documents addressed the MB-09 watershed, which drains to the stormwater outfall at the property. However, the Town admits that it did not contemplate improvements to the property during either the study or plan because, at the time, the regulatory framework encouraged infiltrative stormwater treatment methods rather than end-of-pipe solutions, such as the treatment facility designed for the property. The Town's former director testified that this changed when the State developed "more robust tools," allowing the Town to then consider end-of-pipe phosphorus reduction projects. He asserted that both the 2017 study and 2020 plan were preliminary and "fluid" documents subject to change. When explaining why he decided on the property for a stormwater treatment facility, the former director testified that his decision was based on analysis by his professional staff.

¶ 18. The trial court did not find the former director's explanation credible, because he was unable to explain the alleged analysis that was conducted, and the Town introduced no evidence of such an analysis. The trial court noted that, aside from a single cost comparison, which

8

we address below, the Town conducted no additional studies and obtained no expert opinions to assess the property's suitability after selecting it. The court accurately described the evidence presented, which supported its explanation for discrediting the director's testimony. See Lofts Essex, LLC v. Strategis Floor & Décor Inc., 2019 VT 82, ¶ 23, 211 Vt. 204, 224 A.3d 116 ("As the trier of fact, it is the province of the trial court to determine the credibility of the witnesses and weigh the persuasiveness of the evidence. Accordingly, a court is not required to credit an expert witness's opinion whenever the witness is qualified to testify as an expert." (alteration, citation, and quotations omitted)). Even if, as the Town claims, new tools for analyzing end-of-pipe treatment rendered the 2017 study and 2020 plan obsolete, the Town failed to show that it actually used these tools to find the most suitable site for its proposed phosphorus reduction project.[3] The Town therefore failed to show that it met the due-consideration requirement of 24 V.S.A. § 3601(4).

¶ 19. The Town argues that it presented evidence of the costs of constructing a stormwater treatment facility at an alternative location, 937 East Lakeshore Drive, which it determined to be twice as expensive as the proposed facility at the property. The trial court found that the Town conducted this comparison after already deciding to take Mongeon Bay's property, and this alternative was assessed using the same stormwater treatment facility design—a system designed specifically to fit Mongeon Bay's property and nowhere else. Though the Town asserts that the trial court improperly imposed a temporal requirement on it by faulting the Town for failing to evaluate alternatives before selecting the property as an ideal site, the trial court was well within its discretion in determining this was not a credible effort by the Town to consider

---

[3] At trial, the Town introduced its 2024 Phosphorus Control Plan, which identified the property as a location where it planned to use an end-of-pipe stormwater treatment method. This was the first time the property had been specifically referenced in any of the phosphorus plans. The plan was published while this litigation was pending, more than two years after the Town decided to condemn the property and initiated the condemnation proceeding. It is therefore not probative of the Town's consideration of alternatives prior to making its condemnation decision.

alternatives. The comparison was tailored to justify a preselected site and did not reflect a genuine evaluation of reasonable alternative properties or designs. Additionally, the record shows that the Town only analyzed 937 East Lakeshore Drive at Mongeon Bay's request. The burden to duly consider alternative properties and locations is not the property owner's burden, but the condemning party's burden. The Town cannot shift its statutory duty to identify and evaluate reasonable alternatives onto Mongeon Bay.

¶ 20. The Town's failure to meaningfully consider alternative sites for the proposed project stands in contrast to other takings cases in which we have affirmed the granting of necessity petitions. In Agency of Transportation v. Timberlake Associates, LLC, we affirmed the trial court's decision to grant the taking of land for a highway reconstruction project. 2024 VT 83, ¶ 1. The Vermont Agency of Transportation showed that it had commissioned a scoping study to identify options to improve traffic conditions at a particular intersection, considered four alternative designs, conducted traffic modeling which it used to update designs, and repeatedly revised its project based on public comments and expert opinions. In re Transp. Project Colchester HES NH 5600(14) (Exit 16 Diverging Diamond Interchange), No. 484-6-19 Cncv, slip op. at 3 (Vt. Super. Ct. Mar. 9, 2022), aff'd Timberlake, 2024 VT 83. On appeal, we determined that the Agency properly considered the adequacy of other locations through its "commissioned scoping study, which evaluated alternative project designs," and decision based on a design that "outperformed the other options." Timberlake, 2024 VT 83, ¶ 8.

¶ 21. In contrast, here, the Town commissioned a comprehensive scoping study to improve stormwater management, identifying forty-nine potential locations.[4] The Town then narrowed down potential project sites to thirty-four of these locations for its 2020 Phosphorus

---

[4] The 2017 scoping study combines three separate scoping studies, including a study to "enhance stormwater management through the project study area." The other two studies are unrelated to the issues here.

Control Plan, which it developed to comply with federal and state regulations. Instead of continuing to evaluate and refine a proposal from one of those sites, the Town asserted that it selected the property based on a completely different method of stormwater treatment. The Town did not show that its proposal outperformed any of the other thirty-four sites identified in the scoping study. This is not the "due consideration" that this Court has previously found sufficient. Cf. id. (affirming finding of necessity where agency proved it gave due consideration to other locations through scoping study that evaluated multiple project designs and choice of design that outperformed others).

¶ 22. The Town was required to present evidence on each factor to the extent practicable. Id. The record supports the trial court's finding that the Town did not adequately consider all the statutory factors, which in turn supports its conclusion that the Town did not meet its burden to prove necessity.

¶ 23. The Town makes various other arguments on appeal, none of which merit reversal. First, the Town asserts that the trial court imposed a higher standard for necessity than the statute requires, demanding a perfect solution instead of a reasonable one. The Town argues that this is contrary to the rule set forth in Cersosimo v. Town of Townshend, where we explained that necessity under the highway condemnation statute "does not mean an imperative, indispensable or absolute necessity but only that the taking be reasonably necessary to the accomplishment of the end in view under the particular circumstances." 139 Vt. at 597, 431 A.2d at 498. The Town argues that the trial court required proof that it was absolutely necessary to take the property to reduce pollution in Malletts Bay, which is an impossible standard. The court's decision does not support this assertion. The court did not require the Town to prove that it found the best location of all the sites it analyzed. Rather, the court found that the Town did not sufficiently consider alternatives at all, and therefore did not meet its burden under 24 V.S.A. § 3601(4).

11

¶ 24. Second, the Town argues that the trial court abused its discretion by considering evidence of the alternative location presented by Mongeon Bay's expert and concluding this site was superior. The Town argues that Mongeon Bay's expert, who presented testimony and evidence on an alternative stormwater treatment facility and site, based her analysis on "irrelevant regulatory standards" and did not perform any slope stability analysis. The Town claims that the expert's proposal was dangerous and incomplete and that the trial court ignored safety risks associated with the alternative proposal.

¶ 25. The Town essentially attacks the credibility of Mongeon Bay's expert, which is a matter within the province of the trial court. See Lofts Essex, LLC, 2019 VT 82, ¶ 23 (explaining that determining credibility of witnesses and weighing evidence accordingly is within role of trial court). The Town did not object to Mongeon Bay's expert's qualifications and stipulated to the admission of her report. To the extent the Town asserts the trial court should not have admitted her testimony about the alternative site, the Town has not demonstrated that it preserved this argument for appeal with specific references to the record. See V.R.A.P. 28(a)(4)(A) (requiring appellant's principal brief contain argument that includes "issues presented [and] how they were preserved . . . with citations to the . . . parts of the record on which the appellant relies").

¶ 26. The trial court found Mongeon Bay's expert's approach to be "comprehensive and compelling," because it was consistent with the Town's own stormwater management plans, the State of Vermont Stormwater Program's 2017 Vermont Stormwater Management Manual, and best current practices for calculating phosphorus loads. We defer to the court's determinations regarding the credibility of Mongeon Bay's expert witness and the "persuasive effect of the evidence." Jackson, 2025 VT 29, ¶ 22 (quotation omitted). Moreover, the trial court did not rule that the Town had to construct the stormwater facility at the site analyzed by Mongeon Bay's expert. Rather, the court relied on the expert's testimony to support its conclusion that the Town

12

did not adequately consider alternative properties. The fact that the court found Mongeon Bay's expert credible does not render its decision untenable.

¶ 27. Third, the Town argues that the trial court substituted its own judgment for the Town's on a complex public policy issue—reducing phosphorus flow into Lake Champlain—that is best suited for local decisionmaking, pointing to the trial court's focus on the cost per pound of phosphorus removed by the proposed project. Title 24, Chapter 101, does not require the trial court to defer to the Town simply because it is making complex public policy decisions. Contrast 19 V.S.A. § 505(a)(3)(A) (requiring trial court to "presume that the Agency's determination of the necessity for and public purpose of a project is correct, unless a party demonstrates bad faith or abuse of discretion on the part of the Agency"), with 24 V.S.A. § 3609(b) ("The burden of proof of the necessity of the taking shall be upon the board."). To the contrary: the statute requires the court to independently assess whether the Town's decision is supported by adequate reasoning and consideration of alternatives. The court acted consistently with the statute in evaluating whether the Town's decisionmaking process satisfied the requirements imposed by 24 V.S.A. § 3601(4) and determining that the Town did not meet its burden.

¶ 28. Moreover, the Town mischaracterizes the court's discussion of the phosphorus issue. The court was responding to the Town's claim that one of the reasons it was necessary to take the property was to meet the Town's obligation to reduce phosphorus runoff. The trial court found that the Town's proposed facility at the property would cost about $1,603,000 and remove only 3.29 pounds of phosphorus per year—costing $485,757.58 per pound removed. In comparison, Mongeon Bay's expert presented evidence that constructing the stormwater facility at an alternative site would remove phosphorus at an estimated cost of $50,655.30 per pound each year, removing 12.1 pounds of phosphorus annually. This comparison demonstrated that one of the Town's stated reasons for taking the property was unpersuasive. The Town itself acknowledged at trial that it considered cost per pound of removal in deciding where to locate

13

phosphorus control projects. The trial court did not abuse its discretion by pointing out this discrepancy between the Town's and Mongeon Bay's proposals, which supports the court's conclusion that the Town failed to adequately consider alternatives.

¶ 29. Lastly, the Town asserts that 24 V.S.A. § 3601(4) requires an equitable analysis that considers all relevant factors, and that the court abused its discretion by failing to consider that its proposed taking would meet the Town's phosphorus reduction obligations, protect public safety, and reduce legal disputes with Mongeon Bay. Cf. New England Phoenix Co. v. Grand Isle Veterinary Hosp., Inc., 2022 VT 10, ¶¶ 21-22, 216 Vt. 227, 275 A.3d 134 (stating that trial court fails to exercise its discretion where it does not consider factors relevant to statutorily mandated procedural requirements of foreclosure sale, any requirements set out in foreclosure judgment, and other factors implicating fairness or integrity of foreclosure sale). We do not see that the court ignored any relevant factors. As explained above, the Town had the burden to prove "necessity" under 24 V.S.A. § 3601(4) and did not do so. While the Town focused heavily on its potential liability to justify the taking, it failed to provide evidence that it gave due consideration to several statutory factors, such as the cost and inconvenience to the property owner, and the adequacy of other property and locations. See 24 V.S.A. § 3601(4); Timberlake, 2024 VT 83, ¶ 8 (explaining that condemner must present evidence on each of statutory factors to extent applicable). We disagree that the trial court "punished" the Town for trying to prevent future potential liability because of the easement on the property. Rather, the court found that this potential liability was speculative and did not support condemning the property for public use. The trial court's decision was within its discretion, and we therefore see no reason to disturb it.

Affirmed.

FOR THE COURT:

_____

Associate Justice

14